UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Cr. A. No. 10-00293 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ANGELA S. LAFONTA | MAG. JUDGE KAREN L. HAYES |

**WRITTEN REASONS FOR RULING ON DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT**

Defendant Angela S. LaFonta was indicted by the Government on twelve counts of making false claims to the United States Department of Health and Human Services through its Child Care Assistance Program ("CCAP"). The CCAP is administered by the Louisiana Department of Social Services, Office of Family Support, and provides financial assistance to parents who are working or attending school or training by providing payments for eligible child care providers, including Class A day care centers.

Defendant owned and operated two Class A day care centers: Tinkerbelle's Day Care in Winnsboro, Louisiana, and Tinkerbelle's Day Care #2 in Rayville, Louisiana. As a Class A day care provider, she was required, as part of her agreement with the Louisiana Department of Social Services, to keep a daily attendance record for each child participating in CCAP, including arrival and departure times. To receive payment from the Office of Family Support, each provider must monthly complete and submit a provider invoice which includes the number of days or hours that each child attended and the days or hours each child was absent.

The Government alleged in each of the counts against Defendant that she knowingly made

and presented to the Office of Family Support false claims for reimbursement for services allegedly provided in twelve different months: October 2006, November 2006, March 2007, April 2007, June 2007, July 2007, August 2007, November 2007, December 2007, September 2008, December 2008, and January 2009. The Government alleged that for each of these months Defendant submitted a false invoice claiming reimbursement for day care services for certain specified children, knowing that the claim was false in that some of the children for whom the day care center services were claimed were, in fact, not cared for at or by the day care center, and knowing that the claim was false in that the claim listed an inflated and inaccurate number of hours of attendance for the children, all in violation of 18 U.S.C. § 287.

On September 23, 2011, after a four-day trial, the jury convicted Defendant of Count 9 for the service month of December 2007; Count 11 for the service month of December 2008; and Count 12 for the service month of January 2009. The jury acquitted Defendant of the remaining counts. On January 3, 2012, the Court held a sentencing hearing in the above-referenced matter. At that time, the Court ruled on Defendant Angela S. LaFonta's objections to the Pre-Sentence Report. The Court now issues these written reasons for its rulings.

    A.    **Objection #1**

Defendant objects to paragraphs 13-17 of the Pre-Sentence Report on the bases that it is not clear how the amount of loss was determined, the figures provided by the Government are speculative, and Defendant should not be held accountable for loss greater than the loss attributable to her counts of conviction.

Under U.S.S.G. § 2B1.1(a)(2), Defendant has a base offense level of 6, which is enhanced based on the total amount of loss under the table in § 2B1.1(b)(1)(E). "'Actual loss' means the

reasonably foreseeable pecuniary harm that resulted from the offense[s]." U.S.S.G. § 2B1.1 comment n.3(A)(I). "'[R]easonably foreseeable pecuniary harm' means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known was a potential result of the offense." U.S.S.G. § 2B1.1 comment n. 3(A)(iv). "'Intended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1 comment n. 3(A)(ii). In this case, the Probation Officer determined, based on the evidence provided by the Government, that the base offense level should be increased by 10 under § 2B1.1(b)(1)(F) because the loss was more than $120,000, but was not more than $200,000.00.

    The Government has the burden to "prove by a preponderance of the evidence that the defendant had the subjective intent to cause the loss that is used to calculate his offense level." *United States v. Sanders*, 343 F.3d 511, 527 (5th Cir. 2003); *see also United States v. John*, 597 F.3d 263, 279 n. 58 (5th Cir. 2010) (quoting same). Even "a jury's verdict of acquittal on some . . . counts does not prevent the sentencing court from considering conduct underlying the acquitted count as long as that 'related' conduct has been proved by a preponderance of the evidence." *United States v. Pineiro*, 470 F.3d 200, 206 (5th Cir. 2006); *see also United States v. Brown*, 354 Fed. App'x 216 (5th Cir. 2009) (quoting same). Although the Government is not required to use a particular method, "[t]he method used to calculate the amount of loss . . . must bear some reasonable relation to the actual or intended harm of the offense." *John*, 597 F.3d at 279 (citation omitted).

    The Government presented testimony from Sharon Sledge, Fraud Investigator, Louisiana Department of Children and Family Services. She testified that she had compared the actual attendance logs for the Winnsboro and Rayville locations to the submitted invoices for both

3

locations. As a result of her comparison, Ms. Sledge found that Tinkerbelle's in Winnsboro was over paid by $54,695.00 in 10 months, and Tinkerbelle's #2 in Rayville was overpaid by $33,000.00, for a total actual loss of $87, 695.00. The attendance logs for Rayville were generally complete for the time period covered by the Indictment. However, for Winnsboro, there were only 10 months of attendance logs, approximately 1/3 of the logs available for Rayville. The remaining 20 months of attendance logs at the Winnsboro location were allegedly lost or thrown away after flooding following Hurricane Gustav. Therefore, the Government contends that a reasonable estimate of loss for the entire 30-month period can be obtained by doubling the Winnsboro loss figure to $100,000. The Government contends that this figure is very conservative, since 2/3 of the records were missing. The Government further contends that the figure is a reasonable estimate of loss because it does not account for the substantial evidence Ms. Sledge uncovered from her interviews of 10-15 employees that the attendance logs were further manipulated to inflate actual attendance times for many children.

Having reviewed the record in this matter, considered the trial testimony, and testimony of Ms. Sledge at the hearing, the Court finds that the loss of $130,000.00 attributed to Defendant in the Pre-Sentence Report is reasonable. Defendant clearly engaged in a pattern of conduct of claiming the maximum number of days for each child in attendance, and there is no evidence to suggest that she varied from this pattern during the 20 months of lost records. Although the Government could have extrapolated from the 10 months of loss to triple that amount, the Government instead conservatively estimated loss at a little less than double the 10-month figure. Thus, Defendant's Objection #1 is DENIED.

However, prior to the hearing, the Court raised a concern that a "district court can award

restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted.'" *United States v. Arledge*, 553 F.3d 881, 898 (5th Cir. 2008) (quoting *United States v. Maturin*, 488 F.3d 657, 660-61 (5th Cir. 2007)). The parties agreed that this is a correct statement of the law.

At the hearing, Ms. Sledge testified to following actual losses attributed to the counts of conviction. In December 2007, with regard to Count 9, there was an actual loss of $7,453.99. In December 2008, with regard to Count 11, there was an actual loss of $7,802.00. In January 2009, with regard to Count 12, there was an actual loss of $1,149.00. In total, the Court finds that Defendant must pay restitution in the amount of $16,404.99. The Pre-Sentence Report is AMENDED to reduce restitution from $130,000.00 to $16,404.99.

**B.     Objection #2**

Defendant objects to the two-level increase for obstruction of justice, contending that the Court must make findings that she willfully attempted to obstruct justice and the Pre-Sentence Report does not identify any specific false statements that Defendant made during her testimony.

The Government contends that the Probation Officer properly applied this enhancement because of Defendant's attempt to influence witnesses and her perjured testimony.

Under U.S.S.G. § 3C1.1, a defendant is enhanced two levels if she has "(A) . . . willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." Application note 2 instructs that, in applying this provision with respect to alleged false statements by the defendant, "the [court] should be cognizant that inaccurate

testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, n.2. On the other hand, if a defendant commits perjury or suborns or attempts to suborn perjury, the enhancement applies "if such perjury pertains to conduct that forms the basis of the offense of conviction." *Id.* at n.4(b).

The Supreme Court has explained that a defendant testifying under oath commits perjury if she "gives false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). "[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition . . . set out." *Id.* at 95; *see also United States v. Johnson*, 352 F.3d 146, 148 (5th Cir. 2003) (stating that the court must "identify false testimony concerning a material matter" and "indicate the witness testified with willful intent to provide false testimony."). However, "[u]pon a proper determination that the [defendant] has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines." *United States v. Donnian*, 507 U.S. 87, 96 (1993). That is, if Defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory," she must be enhanced two levels. *Id.* at 94.

First, the Court finds that the Probation Officer properly applied the obstruction of justice enhancement based on Defendant's conduct toward witnesses, both prior to and during trial. During the sentencing hearing, the Government presented the testimony of Special Agent Hanna, Office of Inspector General, United States Department of Health and Human Services. Agent Hanna testified

6

that several witnesses complained that Defendant contacted them prior to trial regarding their testimony and basically threatened them with action by her attorney if they were to testify against her position in trial. As a result of these complaints, Magistrate Judge Hayes held a bond revocation hearing. Although Magistrate Judge Hayes allowed Defendant to remain on bond, she imposed a condition that Defendant not have any contact with witnesses.

Additionally, Agent Hanna testified that he was contacted by a witness, Laura Holiday, the evening before her testimony. Ms. Holiday raised a concern about her previous contact with Defendant. Ms. Holiday testified that Defendant called her and told her that there was a warrant out for her arrest. Ms. Holiday called Agent Hanna for advice, and he gave the telephone to Assistant United States Attorney Joe Jarzabek. AUSA Jarzabek advised Ms. Holiday to tell the truth.

The following day, on the day of her testimony, in violation of Magistrate Judge Hayes' instructions, Defendant picked up Ms. Holiday and brought her to Court to be a defense witness. During that time, Defendant attempted to talk to Ms. Holiday about her testimony, but Ms. Holiday ended the conversation.

Agent Hanna's testimony is consistent with the record and the Court's own recollection of events. The Court notes that at the conclusion of the August 2, 2011 bond revocation hearing, Magistrate Judge Hayes ordered Defendant to refrain from "any contact whatsoever with potential or actual witnesses or victims associated with this matter." [Doc. No. 36]. Thus, Defendant's conversation with and transportation of Ms. Holiday clearly violated a direct court order. Although Defendant's counsel offered the possibility that one of his office worker's had unknowingly solicited Defendant's assistance with the witness's transportation, Defendant was well aware that she was not to contact witnesses. More importantly, Ms. Holiday testified that Defendant attempted to

engage her in a discussion of the testimony of other witnesses and how they were lying about Defendant's actions. Ms. Holiday refused to discuss the case with Defendant. Thus, even if her transportation can be excused, her attempt to influence Ms. Holiday during their ride can not be excused.

Second, the Court finds that the Probation Officer correctly applied the obstruction of justice enhancement because Defendant perjured herself at trial. During her trial testimony, Defendant attempted to shift blame for any false claims to her employees, contending that, at least at the Rayville location, her employee, Sharon James, was responsible for the fraud. However, the jury was instructed that it could find Defendant guilty only if it found beyond a reasonable doubt that she "knowingly" presented a false claim. By convicting her of counts involving both the Winnsboro location and the Rayville location, it is clear that the jury found that Defendant's testimony was not credible. Likewise, Defendant accused case agents of lying about her conduct, but it is clear that the jury also rejected her testimony in this regard. While Defendant may deny that she testified falsely, the jury could not have reached a guilty verdict in this case without determining that she had testified falsely about material matters.

Under these facts, the Probation Officer correctly applied a two-level enhancement for obstruction of justice based both on Defendant's conduct with witnesses and her perjured testimony at trial. Defendant's Objection #2 is DENIED.

    **C.    Objection #3**

Defendant objects to the four-level leadership enhancement.

Pursuant to U.S.S.G. § 3B1.1(a), a defendant's offense level is enhanced 4 levels if she was the organizer or leader of a criminal activity involving five or more participants or which was

otherwise extensive. The commentary to the Guidelines explains that a "'participant' is a person who is criminally responsible for the commission of the offense, but need not be convicted." U.S.S.G. § 3B1.1, cmt. n. 1. That is, the individuals directed or led "need not have been charged or convicted with [a defendant] in order to count as participants in the criminal activity; they need only have participated knowingly in some part of the criminal enterprise." *United States v. Boutte*, 13 F.3d 855, 860 (5th Cir. 1994) (citing § 3B1.1, cmt. n.1) (other citation omitted).

In this case, it is undisputed that Defendant was the owner of two day care centers. The Government presented evidence that Defendant was the leader in that she directed the two center managers, Sharon James and Annie Henderson, in the falsification of records. Further, as the owner of both centers, Defendant made the decision to require employees to sign their children in as attending, or they could not work. She actually hung a sign which reminded employees of this requirement. Thus, she directed a number of additional workers to engage in criminal conduct in order to facilitate her submission of false claims to the Government. Based on interviews with Ms. Sledge, at least 10-15 workers admitted that the attendance records were falsified.

Under these facts, the Court finds no revision to the Pre-Sentence Report is warranted, and Defendant's Objection #3 is DENIED.

### D. Objection #4

Defendant objects to Paragraph 32 of the Pre-Sentence Report in which she is enhanced 2 points under U.S.S.G. § 3B1.3 for abuse of a position of public or private trust because the alleged abuse of trust did not facilitate the commission or concealment of her offense.

United States Sentencing Guidelines Section 3B1.3 increases punishment for those who abuse positions of public or private trust in a manner that significantly facilitated the commission

or concealment of the offense at issue.

> Under the application notes to § 3B1.3, a position of public or private trust is
>
> characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S.S.G. § 3B1.3 n.1; *see also United States v. Iloani*, 143 F.3d 921, 923 (5th Cir. 1998) ("The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons.") (citations and internal quotation marks omitted).

In this case, Defendant does not deny that she held a position of trust with respect to her position as the director of a Class A day care receiving CCAP funds. Nor could she. *See United States v. Gieger*, 190 F.3d 661, 665 (5th Cir. 1999) (abuse-of-trust enhancement imposed on the operators of an ambulance company that filed fraudulent claims with Medicare); *see also United States v. Andradi*, 309 Fed. App'x. 891, 894 (5th Cir. 2009) ("'[B]ecause the government as insurer depends upon the honesty of the [health care provider] and is easily taken advantage of if the [provider] is not honest,' . . . an enhancement is appropriate when providers . . . abuse this trust.") (quoting *United States v. Rutgard*, 115 F.3d 1270, 1293 (9th Cir. 1997).

Further, Defendant used her position as owner of both locations to facilitate her abuse of the position of trust. She alone was the person responsible for filling out the invoices used to claim the fraudulent amounts and, in that, position, she was required by contract to compare the attendance

logs to the submitted invoices. Finally, even if the Court were to accept Defendant's contention that she was mislead by Sharon James, the employee at the Rayville location, she knew that children were not attending the locations 100% of the time and had the ability as owner to verify this information, but deliberately failed to do so.

Accordingly, Defendant's Objection #4 is also DENIED.

### E. Objection #5

Defendant objects that, based on her other objections, she should have a total offense level of 6. Given her criminal history category of I, she contends that she should be sentenced in the 0-6 months range of imprisonment.

For the reasons set forth above, Defendant's objection #5 is DENIED.

MONROE, LOUISIANA, this 19th day of January, 2012.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE